UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL SHERIDAN,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>BRENT REINKE; PHILIP VALDEZ; NORMA RODRIGUEZ; MADDOX; JUSTIN ACOSTA; CHRISTOPHER ROSE; SERGEANT KERR; CHARLES FLETCHER; and CORRECTIONS CORPORATION OF AMERICA,<br><br>　　　　　　Defendants. | Case No. 1:10-CV-00359-EJL<br><br>**MEMORANDUM DECISION AND ORDER ON MOTION TO DISMISS OR FOR SUMMARY JUDGMENT (Dkt. 23)** |

Currently pending is Defendants' Motion to Dismiss or for Summary Judgment (Dkt. 23). Plaintiff has responded to the Motion (Dkt. 25). Defendants have submitted a Reply (Dkt. 26), and the matter is now ripe. The Court finds that the decisional process would not be aided by oral argument, and it will resolve this matter after consideration of the parties' written briefing. D. Idaho L. Civ. R. 7.1(d).  For the reasons set forth below, the Court will deny Defendants' Motion.

## BACKGROUND

Plaintiff is an inmate in custody of the Idaho Department of Corrections (IDOC) housed at the private prison, Idaho Correctional Center (ICC), which is operated by

**MEMORANDUM DECISION AND ORDER - 1**

Correctional Corporation of America (CCA). The Court reviewed Plaintiff's initial complaint and allowed one claim to proceed forward under the Eighth Amendment related to his conditions of confinement as against CCA, one of its facilitators, Phillip Valdez, and Plaintiff's Unit Manager, Norma Rodriquez (collectively "CCA Defendants"). (Dkt. 14).

Under this claim, Plaintiff alleges that during the seven years of his confinement, from January 2001 to July 2008, the conditions of his confinement posed a serious risk to his personal safety. He alleges that there were insufficient staff and that the staff were not adequately trained, that a culture existed that promoted gang and inmate violence, that the detention officers (including Defendants Rodriquez and Valdez) were aware of the serious risks of and incidents of violence and not only were deliberately indifferent to them, but promoted the incidents intentionally through customs and policies in treatment of the inmates. Plaintiff alleges that he at all times was completely disabled from Post Traumatic Stress Disorder (PTSD), and that as a result of these conditions of confinement, he experienced the "threat of physical violence" daily, and that his PTSD was exacerbated.

## DISCUSSION

The CCA Defendants move to dismiss or for summary judgment on two grounds: (1) Plaintiff failed to exhaust his administrative remedies, and (2) Plaintiff seeks damages for an injury that is non-compensable under 42 U.S.C. § 1983.

**A.     The Exhaustion Requirement**

**MEMORANDUM DECISION AND ORDER - 2**

In the Ninth Circuit, a claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). Defendants have the burden to plead and prove exhaustion, and the reviewing court may look beyond the pleadings to resolve disputed issues of fact, if necessary. *Id*.

The federal Prison Litigation Reform Act (PLRA) requires pre-complaint exhaustion of administrative remedies for all federal claims brought by state prisoners who challenge the conditions of their confinement: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Under the PLRA, proper exhaustion is also required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of

**MEMORANDUM DECISION AND ORDER - 3**

proper exhaustion." *Jones*, 549 U.S. at 218.

There are some circumstances under which courts have excused an inmate's failure to comply with technical exhaustion requirements, however. For example, when prison officials prevented exhaustion from occurring through misconduct or failure to respond to a grievance within the policy time limits. *See Hoak v. Smith*, 2009 WL 3806336 (D. Idaho Nov. 9, 2009). Additionally, inmates have been allowed to proceed when no other relief is available at the agency level. In other words, "[o]nce an agency has granted some relief and explained that no other relief is available, 'the administrative process has not been obstructed it has been exhausted.'" *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005)(*quoting Jasch v. Potter*, 302 F.3d 1092, 1096 (9th Cir. 2002)).

### 1.   ICC's Grievance Process

Although it is a privately-run prison, ICC follows the same three-step administrative grievance procedure that the Idaho Department of Correction uses, which requires a prisoner to submit an informal concern form describing the problem, followed by the filing of a formal grievance, and an appeal of any adverse decision. (Affidavit of Chester Penn, Dkt. 23-2 ("Penn Aff."), at ¶¶ 5&6; Exh. B.)

The prisoner begins this process by routing the concern form to the staff member most capable of addressing the problem. (Penn Aff., ¶ 11.) If the issue is not resolved, the prisoner must then complete a grievance form and file the grievance within 15 days of the incident. (*Id.* at ¶ 12.) The grievance form must contain specific information regarding the nature of the complaint, including the dates, places, names, and how the offender has

**MEMORANDUM DECISION AND ORDER - 4**

been adversely affected. (*Id*. at ¶ 13.) The "grievance coordinator" at the prison will route a properly completed grievance to the appropriate staff member, who must respond within 7 days. (*Id*.)

After the staff member responds, the grievance coordinator forwards the grievance to the "reviewing authority," usually the deputy warden, who reviews the prisoner's complaint and the staff member's response and issues its own response. (*Id*.)

The reviewing authority must return the completed grievance to the grievance coordinator within fourteen (14) working days. *Id.* The grievance coordinator files the original form and returns a copy to the offender with the responses of the assigned staff and the reviewing authority. (*Id.*)

If the prisoner is dissatisfied with the reviewing authority's decision, he may then appeal within 10 days of receiving a response. (*Id.* at ¶ 14.) When the grievance coordinator receives an appeal, he or she must log the appeal, and forward it to the "appellate authority," which is usually the facility head. (*Id*. at ¶ 15.) The appellate authority must draft a response, return it to the grievance coordinator, and the grievance coordinator must forward the completed appeal within fourteen (14) days. (*Id.*)  At this point, the administrative process is exhausted. (*Id.* at ¶ 16.)

    **2.**    **Analysis**

In support of their Motion, Defendants have submitted two affidavits from Chester Penn, the Grievance Coordinator at ICC and the custodian of ICC's grievance records. (Dkt. 23-2 & 26-1.) Penn states in his first affidavit that he reviewed the grievance

**MEMORANDUM DECISION AND ORDER - 5**

database for "all grievances submitted to ICC by Michael Sheridan during January 1, 2005 through January 1, 2009." (Dkt. 23-2, ¶ 19.) Penn further states that he found no record that Sheridan filed a timely grievance of his claim regarding prison conditions. Specifically, Penn states:

> [T]here is no record in the ICC database that Michael Sheridan ever filed a timely grievance regarding any of the following claims: (1) insufficient staff and that the staff was not adequately trained, (2) that a culture existed that promoted gang and inmate violence, (3) that the detention officers were aware of the serious risks of and incidents of violence and not only were deliberately indifferent to them, but promoted the incidents intentionally through customs and policies in treatment of the inmates.

*Id.*, ¶ 20.

Based on Penn's affidavit, Defendants argue that Plaintiff failed to exhaust the proper administrative channels at ICC before filing this lawsuit and that his claims against the CCA defendants must be dismissed.

Plaintiff responds that ICC has no way of tracking concern forms that are not responded to, and that he cannot prove that he filled out the proper forms because either he was not given a copy or any copy that he did have was confiscated and not returned when he was transferred out of ICC in July 2008.

In his second affidavit, Penn states that even assuming Plaintiff's statements to be true, ICC would still have a copy of his concerns or grievances on file in its grievance log. (Dkt. 26-1, ¶ 12.) Because there is no record of either, Defendants contend the forms do not exist. Furthermore, Defendants contend that the only grievances that could be at issue are ones that post-date the two year statute of limitations which applies to a § 1983

**MEMORANDUM DECISION AND ORDER - 6**

civil rights claim.

Because it implicates the scope of the record at issue, the Court will first address Defendants' statute of limitations contention.

### a. Legal Standards for Statute of Limitations

In a civil rights case brought under § 1983, the statue of limitations is determined by the law of the state in which the action arose. *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-250 (1989); *Wilson v. Garcia*, 471 U.S. 261, 279-80 (1985)). Section 1983 claims are subject to the state statute of limitations for personal injury actions because such claims have been found analogous to actions for injuries to personal rights. *Wilson*, 471 U.S. at 277 (later overruled only as to claims brought under the Securities Exchange Act of 1934). In Idaho, the limitations period for claims alleging personal injury is two years. Idaho Code § 5-219(4).

The rules governing tolling, or suspending, of the statute of limitations are also provided by state law unless an important federal policy would be undermined. *See Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464-65 (1975). The Idaho Supreme Court has determined that "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute." *Wilhelm v. Frampton*, 158 P.3d 310, 312 (Idaho 2007). In other words, outside of certain post-conviction matters, equitable tolling is not available to a plaintiff under Idaho law. Statutory tolling is available only for a person's minority status or insanity. Idaho Code § 5-230.

**MEMORANDUM DECISION AND ORDER - 7**

Idaho law does recognize, however, the limited doctrine of "equitable estoppel." *J.R. Simplot Co., v. Chemetics International, Inc.*, 887 P.2d 1039, 1041 (Idaho 1994). Equitable estoppel does not toll a limitations period, but it works in a similar manner to prevent a party who has falsely represented or concealed a material fact with actual or constructive knowledge of the truth from pleading and utilizing the statute of limitations as a bar.[1] *Id.*

Regardless of state law, the limitations period for bringing a civil rights action will be tolled during the time that an inmate is exhausting his administrative remedies in prison pursuant to the Prison Litigation Reform Act ("PLRA"). *Brown v. Valoff*, 422 F.3d 926, 943 (9th Cir. 2005).

While state law determines the relevant statute of limitations and the rules governing tolling, federal law determines when a claim accrues. *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 926 (9th Cir. 2004). A civil rights claim accrues when the plaintiff knows or should know of the injury that forms the basis of the cause of action. *See id.* (citing *Two Rivers v. Lewis*, 174 F.3d 987, 991 (9th Cir.1999)). A plaintiff "must be diligent in discovering the critical facts," or his claim will be barred if he "should have known in the exercise of due diligence." *Bibeau v. Pacific Northwest Research Foundation*, 188 F.3d 1105, 1108 (9th Cir.1999).

---

[1] In a related vein, Idaho statute contains a discovery exception for the beginning of a limitations period for professional malpractice claims "in the case of negligently placed foreign objects and fraudulent concealment" of facts. Idaho Code § 5-219.

**MEMORANDUM DECISION AND ORDER - 8**

In this case, Defendants contend that the Court may only consider the claims raised in Plaintiff's complaint between July 16, 2008 – the date the statute of limitations expired based on the filing of his complaint on July 16, 2010 – and July 20, 2008 – the date he was transferred out of CCA.  Defendants have made no motion for judgment based on the expiration of the statute of limitations or otherwise established that the statute of limitations has run as a matter of fact and law.  They appear to ask the Court to assume the fact as true.

In view of the current record, the Court may not decide that Plaintiff's claim is time barred unless it is clear on the face of the complaint.  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir.2010) ("A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.') (*quoting Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir.2006)). "[W]here the issue of limitations requires determination of when a claim begins to accrue, the complaint should be dismissed only if the evidence is so clear that there is no genuine factual issue and the determination can be made as a matter of law." *Sisseton-Wahpeton Sioux Tribe v. United States*, 895 F.2d 588, 591 (9th Cir.1990); *In re Swine Flu Prod. Liab. Litig.*, 764 F.2d 637, 638 (9th Cir.1985); *Lundy v. Union Carbide Corp.*, 695 F.2d 394, 397-98 (9th Cir.1982).

It is not clear on the face of Plaintiff's complaint, or the record, that Plaintiff's claim relating to his conditions of confinement is time barred.  "In cases where the

**MEMORANDUM DECISION AND ORDER - 9**

plaintiff alleges ongoing violations, claims outside the limitations period which relate to claims within the limitations period may nonetheless be actionable under the continuing violation doctrine." *Jones v. Stieferman*, 2011 WL 773430, *3 (E.D. Cal. Feb. 28, 2011). Where the plaintiff asserts claims resulting from an alleged ongoing policy, the continuing violation doctrine applies. *Id. (*citing Gutowsky v. County of Placer, 108 F.3d 256, 259-60 (9th Cir.1997) (Plaintiff alleged "that the widespread policy and practices of discrimination of which she complains continued every day of her employment, including days that fall within the limitation period.")

Plaintiff alleges that from January 8, 2001 to July 21, 2008, he was subjected to conditions of confinement which posed a serious risk to his personal safety due to the culture of violence of which the Defendants were deliberately indifferent, that was promoted by the customs and policies in the treatment of the inmates, and that he experienced the threat of physical violence daily. (Dkt. 1, ¶¶ 7&19.) Plaintiff's allegations of continuing violations which relate to his current claim are sufficient enough that this Court cannot conclude as a matter of law that he fails to state a claim for relief based on the expiration of a statute of limitations.

### b. Plaintiff's Exhaustion

The Court finds that Defendants have not met their burden to establish that Plaintiff failed to exhaust his administrative remedies. *Wyatt*, 315 F.3d at 1119. First, Plaintiff's claim goes back to 2001 and Defendants have no grievance record predating 2005 due to the five (5) year retention policy. Accordingly, Defendants have no evidence

**MEMORANDUM DECISION AND ORDER - 10**

or ability to dispute Plaintiff's assertion that he did exhaust his administrative remedies prior to 2005.  Second, the ICC grievance policy, which CCA follows, does not require that any concern forms or any grievance forms deemed to be insufficient by the receiving prison official be recorded into the grievance log.  It is not until a grievance form deemed to be compliant with all requirements is submitted that the grievance is entered into the log.  Accordingly, there is no mechanism by which Defendants could verify that Plaintiff did or did not submit a Concern Form that received no response.

The only verification of a Concern Form that received no response would be Plaintiff's own copy.  The forms are in triplicate, and Plaintiff would have received a copy of any Concern Form.  However, Plaintiff alleges that any copy he would have had was confiscated when he was transferred out of ICC.  Defendants do not dispute this fact and the record contains corroborating evidence of Plaintiff's attempts to resolve his issues directly with the prison without success.  (Dkt. 20-1, pp. 22-24.)  Finally, what grievance records Defendants searched is not entirely clear, and Defendants have not provided the Court with a copy of the grievance log for verification.

Viewing the record in the light most favorable to the non-moving party, the Court finds that Defendants have not met their burden to prove at this stage that Plaintiff failed to exhaust his administrative remedies and that his claim must be dismissed.  Defendants' motion is denied.

B.      **Non-Compensable Injury**

　　　　1.      **Standard of Review on a Motion for Summary Judgment**

**MEMORANDUM DECISION AND ORDER - 11**

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims ...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir.1988).

The Court must be "guided by the substantive evidentiary standards that apply to the case." *Liberty Lobby*, 477 U.S. at 255. If a claim requires clear and convincing evidence, the issue on summary judgment is whether a reasonable jury could conclude that clear and convincing evidence supports the claim. *Id.*

**MEMORANDUM DECISION AND ORDER - 12**

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

The Court has discretion in how it resolves unavailable facts or unsupported facts on motion for summary judgment and generally may issue any "appropriate order" under Fed. R. Civ. P. 56(d) & (e).

**2. Discussion**

Defendants argue that Plaintiff has failed to allege more than a *de minimis* injury which is not recoverable in a § 1983 civil rights claim. 42 U.S.C.§ 1997(e)(e).

Title 42, Section 1997(e)(e) of the United States Code provides This statute, enacted as part of the Prison Litigation Reform Act, provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a

**MEMORANDUM DECISION AND ORDER - 13**

prior showing of physical injury." In *Siglar v. Hightower*, 112 F.3d 191 (5th Cir. 1997), the Fifth Circuit Court of Appeals ruled that the physical injury rule required more than a *de minimis* injury. 112 F.3d at 193. The prisoner alleged that he suffered a sore, bruised ear for three days. 112 F.3d at 191. The court found that the injury did not meet the physical injury requirement and could not support a claim for emotional or mental suffering. 112 F.3d at 193-94. *See also Luong v. Hatt*, 979 F.Supp. 481 (D.N.Y. 1997) (cuts and scratches that lasted for two or three days were insufficient to satisfy physical injury requirement).

In this case, Plaintiff alleges that his injury is the aggravation of his PTSD. The Court noted in its Initial Review Order that it was unclear whether Plaintiff alleged more than a *di minimis* injury and allowed the claim to go forward. Defendants do not point out the absence of evidence to support that Plaintiff's PTSD or symptoms are more than *de minimis* or otherwise clarify the record as to the Plaintiff's condition. As such, the record is no more clear at this time and the Court again finds that Plaintiff's allegations are sufficient to state a claim and/or there are genuine issues of material fact remaining on this issue at this stage.

For the foregoing reasons, Defendants' motion is denied.

## ORDER

IT IS ORDERED that Defendants' Motion to Dismiss and/or for Summary Judgment is DENIED (Dkt. 23). The Court's Initial Review of Plaintiff's Amended

**MEMORANDUM DECISION AND ORDER - 14**

Complaint and Scheduling Order will be forthcoming.

DATED: **March 28, 2012**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 15**